The next case set for oral argument is 19-6016, Enri Ruby J. Sawyers v. David G. Waltrip, LLC v. Ruby J. Sawyers. Yes, so Ms. Angela Redden-Jansen? Yes, Your Honors. Good morning. Good morning. May it please the Court, Your Honor, my name is Angela Redden-Jansen and I represent the appellant, David G. Waltrip, LLC. The issue before the Court today is what comprises a debtor's homestead and how that homestead is valued when the debtor is seeking to avoid a lien or a judgment lien. And the home located on the homestead has been damaged by fire and there are insurance proceeds on hand for the exclusive purpose of repairing the debtor's property. The Bankruptcy Court's opinion turned on how to value Ms. Sawyer's property. The Court determined that the pre-restoration value should be used exclusive of the insurance proceeds. The Bankruptcy Court's use of this formula determined that Mr. Waltrip's lien was avoidable in the entirety against the homestead of Ms. Sawyer's, pursuant to 522F. The Bankruptcy Court, when it valued Ms. Sawyer's homestead, valued it as the value of the bricks and mortar of the remaining home on the day of filing, without consideration for the insurance proceeds that were on hand for the restoration and repair of the property. In fact, the restoration and repair of the property had commenced as of the day of filing. Okay, but what the Court was doing was seeking to avoid, determining a lien avoidance, right? Correct, Your Honor. And your client did not have a lien on the insurance proceeds, did it? The proceeds were already out of the hands of the insurance company and were on hand. But your client did not have a lien on the insurance proceeds, did it? No, it did not. But that was irrelevant at this time, because once the proceeds leave the hands of the insurance company, my client has as much right to garnish them as any other funds payable to the debtor. But that is a right that any unsecured creditor would have. It has nothing to do with a lien, does it? No, Your Honor. But Missouri's law is a homestead law. It is not a home exemption. It's a homestead. And Missouri's law is clear. The homestead comprises everything, even the things issuing from the homestead. The home, the land, the appurtenances, the rents, the issues therefrom. And the insurance would definitely be an issue therefrom. And it's money that was being used by the debtor to repair the property. Do you have any authority that that is the appropriate approach in a lien avoidance action under 522F of the Bankruptcy Code? In fact, I do, Your Honor. And I apologize. I believe there's a case I cited in my reply brief that had to do with the 522F motion to avoid the lien. And I apologize. I've forgotten to cite, Your Honor. I believe it's in my reply brief, though. And it has to do with the fact that the debtor was seeking to exempt more than the entirety. Like there was excess proceeds left over after the exemption. So they had to turn over the insurance proceeds after the court had determined the lien avoidance. Is that the Mateer case? It is. I apologize, Your Honors. Thank you. But, yes, there is authority that says that you can exempt the insurance proceeds to the extent of the exemption. They should be considered in the value of the thing. Even Missouri. We're in Missouri. The debtor's homestead rights, the debtor's property rights. Well, let me ask you this. And I know there's a stipulation out there that says that the insurance proceeds were required to be used to rebuild the home. But is that accurate? I mean, couldn't the debtors have just taken the money and walked away and moved to a different state? I don't believe so. I mean, I believe the homeowners insurance policy, and I believe that the debtor is stipulated to that, was for the exclusive purpose of the repairing and restoring the property. That was the policy. It is an indivisible unity. If you have something that can only be used to repair something, if you have something you can only use for a certain purpose, you can't separate that out from the entire unity. This is a homestead exemption. It's not an exemption for the home. Well, I'm not talking about the homestead exemption. I'm just talking about the proceeds of the homeowners insurance. They were on deposit with the mortgage company, Your Honors. They could only be paid. But the mortgage company only had a lien up to a certain amount. Correct. So the rest of that money belonged to the debtor. So couldn't the debtor have taken the rest of that money and done whatever the debtor wanted? No. The debtor could only use that property for the purposes of repairing and restoring the property. Well, we got the stipulation that says that, so I'll take that at face value. I don't understand it. I can honestly tell you I do not either, Judge Saldana. I don't. All I know is that that was the way it was. All right. Let me ask a slightly different twist on that. Was the debtor obligated to use the proceeds? Now, I understand that the debtor, according to the stipulation, and I don't understand it either, but according to the stipulation, debtor could only use the insurance proceeds to repair and replace. Was debtor under obligation to repair and replace? What if debtor just walked away? Then the insurance proceeds went back to the insurance company. The debtor doesn't get to keep the benefit of the proceeds. I understand. But that does not affect your argument that they're inseparable from the homestead? The reality of the situation is she did repair the property. I understand. But we're looking at a snapshot on the petition date, correct? That is correct. But we have other lien avoidances in terms of 522 lien avoidances that have to do with personality. And the bankruptcy courts have said those insurance proceeds are as exempt for purposes of avoiding that 522 lien as if they were the thing itself. For purposes of the debtor applying her exemptions to the homestead, the insurance proceeds act in the place of the thing lost. So you can't have it both ways. The debtor can't exempt them when it's convenient to her when it's her homestead. If we were in a state with an unlimited homestead exemption and the debtor had money on deposit, those would be exempted in the entirety. Well, Missouri doesn't have an unlimited homestead exemption. It has a limited homestead exemption. The homestead was claimed as exempt and that exemption was sustained because nobody objected to it, right? Right, to the extent of $15,000. And the real property was abandoned by the trustee, correct? Yes. And nobody objected to that either, right? Correct. Is the record clear that the trustee was aware of the existence of the insurance proceeds? She was aware of the existence of the insurance proceeds. And did not attempt to administer them for the benefit of the estate, correct? No. However, my client had a lien on the property. But once again, you did not have a lien on the insurance proceeds, correct? And I understand, and I think that's where the bankruptcy court went, was. . . You're trying to say wrong? I know, but that's not the right word I should use, and it's not really what I feel. It's erroneous? No, I think they used the wrong measure of value. They didn't consider the entirety of the bundle of sticks that make up the property rights of the debtor. And that's what we need to consider. It's the entirety of that bundle. Tell me something. If before the bankruptcy case was filed, the debtor owned the property, it had been destroyed, the debtor had the insurance proceeds, right? Correct. If the debtor had tried to sell the real property, what would the debtor have gotten for it? The debtor, in this case, that is a very difficult question, okay? But we can look to Missouri law to determine if the debtor had a preexisting sales contract at the time the property burnt down. She would not have gotten the . . . I'm not talking about a preexisting sales contract before it was burnt down. I'm talking about the situation that existed on the date of the filing of the petition. If she had attempted to sell the real property, what would she have gotten for it? Well, given the fact she could only use this property for the purposes of repairing the property, I'm assuming the fair market value of the property as repaired because the property could only be . . . Why as repaired? The buyer, unless the buyer actually bought the insurance proceeds as well, the buyer would not get the insurance proceeds if the buyer was just buying the real property, would it? That's not correct in the State of Missouri. If I have a contract with you, Your Honor, and the house burns down the day before closing . . . Once again, you're assuming a different factual situation. But it's analogous. Because in that case, the seller would be obligated to either reduce the value of the property to the crimson sticks, what that's left, right? And he would then be able to retain the insurance proceeds. Or he would be obligated to turn over the entirety. But he doesn't get to keep both. All he gets is one down. You're talking about contract law. I don't think that's analogous. I understand. But we have . . . In this case, the problem is, Your Honor, the debtor could only use the money to repair the property. So I'm going to stay with the answer, the debtor would have gotten the fair market value of the collateral as repaired. Because the insurance proceeds had one purpose and one purpose only, and that was to repair the property. Okay. Let me ask you a different question. Suppose that on the date, right before the date of the filing of the bankruptcy petition, your client had foreclosed its judgment lien. What do you think they would have gotten? In that case, it's pretty clear, because I am not a lost payee under the insurance policy. And the insurance proceeds had not yet been paid over to the debtor. I would have gotten what stood there, which is the bricks and sticks. But that is also not what happened here, Your Honor. I would not have been a lost payee. I'm precluded from making a claim against the insurance company for the insurance proceeds while still in the hand of the insurance company. I cannot sue them for vexatious refusal to pay me as a non-lost payee under the policy. But had the insurance proceeds been paid to the mortgage company or been paid out, that's a different issue. I have a right to garnish those. I have a right to those claims just like any other judgment lien creditor. But that doesn't affect the value of the property. That's the problem we're struggling with here. And it goes back to Judge Dowell's original hypothetical. We have a pile of burned-out bricks, and the debtor is holding some insurance proceeds. The debtor wants to sell the property. That's the value, what someone would be willing to pay for the property. The insurance is out over here to the side. My problem is I don't think your third-party willing buyer, your good-faith purchaser, is going to offer more than the lower figure that we're talking about because they have no guarantee the property will be repaired. You're correct. However, in this case, in a bankruptcy scenario, all of those insurance proceeds, provided they aren't earmarked for the exclusive use on the repair of the property, so in a normal insurance policy, they would come into the estate and they would be distributed to the unsecured. Okay, but now what you're talking about is perhaps a failure of administration by the trustee in the case, not your rights as a judgment lien creditor, correct? Correct. But we're talking about hypotheticals here, Your Honor. And hypothetically, you've asked me to posit what I think would happen. Well, see, but it's not that hypothetical when the court's obligation is to determine the value of the property on the petition date. And on the petition date, there was a pile of burned-out bricks, and over here was some insurance. For the specific purpose. I understand your argument. Believe me, I'm trying to get to your argument. I understand your argument. It's an entire – and I guess I'm not making – I guess I've said this like 14 times. Actually, why don't we do this? You're well into your rebuttal time. I am.  Why don't you think about how you want to present that? Thank you. All right. Thank you. Mr. Eggman. So, how did we end up with – is this a husband and wife team? We are, indeed. We practice law together at the law firm of Carmey McDonald. And you both just had appeals on the same day? Yeah. As appellates? Yes, we've been working on the first one for quite a while together, so. Yes, we can see that. May it please the Court, my name is Rob Eggman, and I'm an attorney with the law firm of Carmey McDonald in Clayton, Missouri, here. And I'm representing Ruby Jean Sawyers, who was the debtor in the case and the move-in to the motion to avoid the lien. I'm afraid Judge Dow may have stole some of my opening lines, but I think what we really have here is we have two different assets. We have the home, which was stipulated to being in a burned-out condition on the date of bankruptcy, worth at max $6,000. Then we have an insurance policy. I, too, found the language a little awkward as to whether the insurance policy did go that far, but the most important party in this bankruptcy case found that insurance policy to be an insurance policy that allowed but for one thing, and that is to fix up the home. When this bankruptcy case was filed, that insurance policy became property of the bankruptcy estate. It was the trustee's property at that point in time. It's not the debtor's anymore. It was the trustee's. The trustee conducted a thorough 341 meeting, which was attended to by the creditor in this case, the Waltrip Law Firm. This bankruptcy trustee has been on the panel for, oh, gosh, at least 20 years, maybe 15, 20 years. He's a seasoned bankruptcy trustee and made a business judgment rule that she did not wish to administer upon this policy, repair the home, and attempt to sell it for one reason or another. I can't speculate. Was it formally abandoned? Pardon? Was it formally abandoned? Well, yes. The way the 341 meetings sometimes work is you conformably abandon them at the 341, which I don't think happened at that point in time, but it was abandoned when she filed her no-asset case. And to the extent that it – or her no-asset report, I apologize. It was abandoned by operation of law when it didn't – it wasn't administered. It was indeed. And when the case – the debtor was discharged and the case was closed shortly thereafter. We had a very sophisticated and very active participant creditor in this case. This is not a creditor which did not understand the rules, did not understand how a 341 meeting worked. This was a creditor that could have opposed the no-asset report, had a motion to set aside and try to compel the bankruptcy trustee. But if that creditor made too much noise, someone was going to try and avoid the creditor's lien as a preference, weren't they? Well, Your Honor, that's probably what would have happened. Had Ms. Brown decided to administer upon the policy, she would have filed a 547 action to avoid the lien as a preference and would have simply rebuilt the home herself and then sold it. A lot of work for a $100,000 home, I admit, especially one with a $29,000 lien against it and a $15,000 exemption out there. A lot of – that's a lot of risk for a trustee. Speaking as a trustee myself, I'm not so sure I can quibble with Ms. Brown's decision to walk away from this one. If this was an $800,000 house with a policy of that type, different story. But were these type of monies involved, that could spell disaster for a bankruptcy trustee. So what could have happened is the policy is the property of the state, Ms. Brown administers upon it. If she did determine, certain as she said she did, that she had to repair the house, she could have done it, sold the house and paid creditors and given Ms. Sawyers her $15,000 and sent her on her way. What also could have happened is the creditor, again, a lawyer who has been practicing law for around 40 years, could have garnished this policy. And had that creditor garnished the policy and that garnishment still been in place as of the date of bankruptcy, which the state of execution expired by then, by the way, then they would have had a lien on that policy, which A, could have been avoided by the bankruptcy trustee, and if she chose not to, then B, would have survived the bankruptcy case. Sure, that would have required some cooperation by the debtor to assist with the rebuilding of the home. But let's face it. When you are, as the record reflects, an elderly woman who is a server at Denny's, that $15,000 probably would have been incurred enough to work with the creditor at that point in time to get the property repaired and sold for the benefit of that creditor and the debtor. But that's not what happened here. We are faced with what happened. It is not hypothetical. What happened in this case is there was a fire in November, a judgment in January, and a bankruptcy in February. And we had a home worth $6,000 as determined by an appraiser that we both agreed upon and Judge Renlund. So there was no question that as the petition date, that was the value of the home. Okay, but their argument is not that you say it's valued on the petition date, that's fine, but that doesn't really get you to where you want to go all by itself. Their argument is the value, even on the petition date, should have included the insurance proceeds. And they argue as an analogy, all of these other situations and cases they've cited, that it's included. If you're thinking about exemptions or in other contexts, the cases seem to say that it's included. So what's your basic response to that position? That's their critical position. Right. Everyone is entitled to their argument, Your Honor. That doesn't mean the argument is correct, or in this case, even supported by any existing case law. Their main case law to support this position is the Skelly case, 1963 Missouri Supreme Court case. The problem is it doesn't say that. In Skelly, they were trying to figure out what to do about a contract where the building had burned post-contract, pre-closing, when there was insurance proceeds. And here we're dealing with a $20,000 contract and a $10,000 insurance proceed. And the question is, what happens to that contract? Can the purchaser compel that contract to go forward and lop off the insurance proceeds? Or, as the seller argued, if they want that contract to go forward, do they have to pay the full $20,000 for it? And the court said, no, since the contract is silent as to when the risk of loss passes, we have no choice but to do something, for lack of a better term, kind of equitable. I admit that's distinguishable, and I think I indicated that. Completely distinguishable. How about the case that she cited in response to my question, the Mateer case, which she seems to think is close to being on point? Well, the problem with the cases like Mateer is that I think Mateer and its cases deal more with exemptions of the proceeds of an asset which has been destroyed, whereas here we're dealing with valuation. There's no analogous type argument. I agree that if this was a vehicle worth $10,000 on the day of bankruptcy, and something happened to that vehicle post-bankruptcy or even pre-bankruptcy and there's a $10,000 check, that that is the proceeds of the vehicle. That's not what happened here for exemption purposes. Not to mention the fact that we're not trying to claim an exemption on this entire piece of property. That's not what we're trying to do here. She'd be correct if I came in and said, Your Honor, we get an exemption on this entire piece of property. It's 100 percent exempt, including the insurance proceeds. That wasn't the argument. Because you're dealing with two different races here. You're dealing with the property itself, which Judge Renlund valued at $6,000, and the insurance proceeds. So had the property been repaired on the day of bankruptcy, I think that she's right there, that we can only exempt the $15,000 still. But it's very important to know that. Isn't that part of the problem here, or at least part of the concern, that there's a hint that this is just not fair, that she's taken the money and running? If she'd repaired it before the bankruptcy, there's no question, but the asset would probably have been administered. Instead, she waits, files, then avoids the lien, and then uses the proceeds to repair the property and get it up to a value where if it had been that on the day before the bankruptcy filing, the lien could not have been avoided in its entirety, and the property might have been administered. Well, I'd be happy to talk about the fairness because I kind of look at it just a little bit different, as you may imagine. Here I have an elderly waitress at Denny's who's worked her entire life for a home that burns by fire in the three months pre-petition. She personally guaranteed an attorney fee bill for her grandson, who was going through a custody battle with Mr. Waltrip's law firm and was sued as a result of that. She had poor legal representation, signed a consent judgment, and while the record does not necessarily reflect this, clearly she did not take action to avoid this judgment lien. There was an argument advanced in the state court that a consent judgment with a stay of execution is not a lien. So she was the victim of poor representation, not once, but twice. You take, conversely, our creditor here, a sophisticated lawyer who's been practicing law for over 40 years. He may have been before this court before. I know he does some bankruptcy work. This lawyer let his judgment lien sit, attended the 341 meetings, and waited, and waited until our waitress at Denny's finished the repair on her house and moved back in, and then executed. So while that might just be smart lawyering... Well, let's talk about that. Executed all the way through a sale, right? Right, except the deed was not delivered under Missouri law. The sale's not final until the deed's delivered, which thankfully we had some legal issues going on in the sale. I was not involved in the sale. I came into this case in April of 2018. Quite frankly, I saw it on the news, and I felt sorry for this woman. So everybody's accepting that as the law, that it's not final until... Correct, and I believe, I don't want to speak for Ms. Redden-Jansen. She's nodding her head behind you. Yeah, so we had a very big discussion. We both researched the issue and realized that the sale was not done until the deed was delivered, and the St. Louis County Sheriff did not refuse it. Hence, the lien avoidance would not be moot. Correct. Yes, it would have been moot. So I kind of dovetailed into my latches argument here, and latches is something that really is your only defense to timeliness in a lien avoidance situation, and really it's not uncommon at all for the lien avoidances to be post-discharge and post-closure. In fact, it's too common at all. I unfortunately ended up on the losing end of one of these with Judge Surratt States. I thought I finally had one. I had one case that Ms. Redden-Jansen represented the debtor, and she reopened a case for a deceased lawyer nine years post-discharge, and I thought, well, we got one here. If ever there's a latches case, and Judge Surratt States I think correctly ruled that, yeah, it's been a long time, but the circumstances haven't changed. Nobody was harmed by it being a long time. In this case, we really only have 14 months from the date of the filing and less than a year after the case was closed, and I think it's even less time than in Ray Hall, which was Judge Dowell's case in that thing. Several years, I think, in Hall. So, yeah, even less time than that. So if there had been some harm to the creditor here, then I don't think that there's any argument that can be made that there's latches. The only harm possibly is that he got excited over the fact that the property had increased in value post-petition due to the repair, and consequently, as a result of the lien avoidance, lost that value. But that's not the type of harm. There was no evidence that went away or anything of that type. Finally, with respect to the last argument, there seems to be an unusual argument that I see in there with regard to attorney's fees and costs. You'll note the joint stipulation of fact. We agreed that there were certain attorney's fees and costs incurred in connection with the execution sale. Kind of commonplace in the Eastern District of Missouri. Judge Renlund recognized those attorney's fees and recognized those costs and invited Mr. Waltrip's law firm to file something with the court within 14 days to have those attorney's fees and costs assessed. For one reason or another, they chose not to do so. I'm not sure why. I don't know if it was a concern that perhaps that would somehow make them acquiesce to the order and give up some appeal rights. But whatever the case may be, they chose not to do so, but instead used this as an element to try to attack Judge Renlund's order and try to kind of turn it into the case never should have been reopened itself because there was never an opportunity to pay the attorney's fees and costs incurred by the executing creditor, which I don't think is the standard in this case. I don't think it is at all. And consequently, I think that that point fails on appeal as well. And while I still have plenty of time left, if someone reached kind of the end of our argument, I'd be delighted to take more questions. And you're not obligated to use all your time. All right. Thank you. Well, thank you to the court. Thank you. Okay, Ms. Redden-Jansen. I'll take what's left of his time. I don't think it works that way. You may proceed. Your Honor, 522 A.T. Let's start with I'm not opposing. Walter isn't opposing the reopening of the case. That's not our argument. That's not what we're saying. We're saying it's a condition of the lien avoidance. We should have been awarded our fees. There is a line in the order that says we can ask for them. It doesn't limit when we can ask for them. I assume I can still go ask for them now after the appeal is over. What do you mean it doesn't limit? I thought it said something to the effect of 14 days to file. It says I'm free to do so. Maybe it did. I don't recall. But I thought it said I was free to do so. I don't recall it saying within the next 14 days. Well, the point is why is it an issue on appeal? Because the trial court did not reject your position that you might be able to recover the attorney's fees. The real issue is 522 A.T. dictates that the property should be valued as of the day of filing. It says at the fair market value as of the petition date, right? It doesn't define what property is, though. Property is defined by Missouri law, okay? What is in that debtor's bundle of sticks and twigs? We have numerous examples from the state court and from the bankruptcy court that address the issue of insurance proceeds when there is exempt property. Bankruptcy court acknowledges that the debtor may exempt those property, those insurance proceeds as if they were the property. It sees them as part of the whole. To me, it seems. But this was not a question of what was exempt. It was a question of what is the value of the property on which you had a lien which the debtor was trying to avoid. Correct. But we are only allowed to exempt that property to the extent of the exemption. We can't get to the property unless we know what the exemption is. In order to determine. Well, the exemption is $15,000. Correct. But what do we apply that to? We have to look at the law, the exemption law in the terms of bankruptcy. What do other courts do when it applies the exemption? How do we apply it? What do we apply it to? The first $15,000 after the payment of any mortgages against the property. Correct. But how do we calculate the value? That's not what I'm saying is what do we apply it to? Do we apply it just to the bricks and mortar? Or do we apply it to the entire homestead? Well, here's again the same problem I think we're having. We apply it to what a third party would be willing to pay for the property. Yes, but then the debtor would not have gotten the benefit of the insurance proceeds which she did. That's not the issue. Okay. Let's go to bankruptcy is to provide the debtor with a fresh start, not a head start. This debtor got a head start. The bankruptcy court has the ability to use its equitable powers to make it right. Oh, we're going to use 105 here? Is that the argument? I got 25 seconds left. I figure that's about all 105 is worth. Okay. I saved it for the last. You jumped at 15 seconds too early in my opinion. I apologize, Your Honor. But my point being, though, she got the benefit of a fully restored home. She got the benefit of a complete discharge. So basically she has a home that she has $27,000 on that's worth $109,000. That's not fair, and that's a really odd position for me to take, but it's true. It's not okay. Thank you, Your Honors. Thank you. Thank you.